AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of

USA v. 23-152-05

)
)
)
)
)
)
)

Case No.    5:23-mj-162

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __South Dakota__ *(identify the person or describe the property to be searched and give its location)*:

Device as depicted in **ATTACHMENT A**, which is attached to and incorporated in this Application and Affidavit

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crimes in violation of 21 U.S.C §§ 846, 844 and 841(a)(1), as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _August 31, 2023_ *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _Mark Moreno/US Clerk of Courts_.
*(United States Magistrate Judge)*

☒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for _30_ days *(not to exceed 30)*.    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _August 17, 2023 @ 11:10 a.m. Central Time – by video_

Judge's signature

City and state: ~~Rapid City, SD~~  _Pierre, South Dakota_

_Mark Moreno, U.S. Magistrate Judge_
*Printed name and title*

cc: AUSA via email – sae

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>5:23-mj-162 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____          _____
                                                            *Executing officer's signature*


                                                            _____
                                                            *Printed name and title*

# UNITED STATES DISTRICT COURT
for the
District of South Dakota
Western Division

In the Matter of the Search of:       )
      )   Case No.    5:23-mj-162
USA v. 23-152-05       )
      )
      )
      )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*Black Samsung phone in black Otter Box case with jewel heart-shaped holder on back of phone, held in Oglala Sioux Tribe Department of Public Safety Evidence.*

a/k/a the SUBJECT DEVICE, as described in **ATTACHMENT A,** which is attached to and incorporated in this Application and Affidavit

located in the District of _____ South Dakota _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See **ATTACHMENT B,** which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Conspiracy to Distribute Controlled Substance |
| 21 U.S.C. § 844 | Possession of a Controlled Substance |

The application is based on these facts:

**X** Continued on the attached affidavit, which is incorporated by reference.

☐ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

Michael Carlow, FBI Task Force Officer
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
                     ☑ submitted, attested to, and acknowledged by reliable electronic means **(video).**

Date: **August 17, 2023**

_____
*Judge's signature*

City and state: **Pierre, South Dakota**

Mark Moreno, U.S. Magistrate **Judge**
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

Black Samsung phone in black Otter Box case with jewel heart-shaped holder on back of phone, currently in custody of the Oglala Sioux Tribe Department of Public Safety and pictured below.

  



2

## ATTACHMENT B

### Description of Property to be Searched for and Seized

All files, records and information that relate to violations of 21 U.S.C. §§ 841(a)(1), 844, and 846:

1. Call documentation, including incoming, outgoing, missed, or attempted calls;

2. Electronic message documentation and content, including sent, unsent, received, or attempted messages whether they are texts, tweets, images, videos, e-mails, or some other form of electronic message;

3. Records evidencing the use of the Internet to communicate with drug customers, and/or co-conspirators, including records of Internet Protocol addresses used;

4. Records of Internet activity, including firewall logs, caches, browser history, cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses;

5. Voicemail documentation and content;

6. Subscriber information;

7. Account information;

8. Lists of customers and contacts and related identifying information;

9. Information related to sources of firearm/s (including names, addresses, phone numbers, or any other identifying information);

10. Information regarding schedules or travel;

11. All bank records, checks, credit card bills, account information, and other financial records;

12. Information pertaining to other assets, including but not limited to Vehicle Identification Numbers (VINs), serial number and/or other identification numbers;

13. Digital images and evidence (and any location data of where the digital items were created such as GPS or other forms of location data), including photographs and/or videos, photographs and/or videos of co-conspirators, assets, controlled substances, firearms and/or evidence of violations of 21 U.S.C. §§ 841(a)(1), 844, and 846;

14. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15. Digital documents tending to show dominion and control over wireless phone/s, including, but not limited to, bills or other business-related documents, correspondence, photographs, and any GPS (Global Positioning System) or other forms of location information associated with the digital documents;

16.    Digital documents or other items tending to identify co-conspirators, customers, and sources; including but not limited to, electronic messages, notes, memoranda, photographs, address, and phone books, maps, organizers, or lists of names and any GPS or other forms of location information associated with the digital documents;

17.    Any (Global Positioning System) and/or location data or information associated with evidence of violations of 21 U.S.C. §§ 841(a)(1), 844, and 846.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| IN THE MATTER OF THE SEARCH OF: | Case No. 5:23-mj-162 |
|---|---|
| USA v. 23-152-05 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT |

STATE OF SOUTH DAKOTA )
)
COUNTY OF PENNINGTON )

I, Michael Carlow, Criminal Investigator with the Oglala Sioux Tribe Department of Public Safety, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Criminal Investigator with the Oglala Sioux Tribe Department of Public Safety ("OSTDPS"), in Pine Ridge, South Dakota. I have held this position since June 2021. I attended and successfully completed Investigator Training Program on April 8, 2022. I am a member of the Badlands Safe Trails Task Force ("BSTTF"), which is a federal drug task force comprised of multiple agencies whose focus is to investigate the use, transportation, distribution, and manufacture of controlled substances. Prior to my appointment with the Criminal Investigations Division, I was assigned as a police officer with OSTDPS from August 2020 to June 2021. Prior to my appointment with OSTDPS, I was assigned as a police officer with the Bureau of Indian Affairs ("BIA") Crow Creek

Agency, Fort Thompson, South Dakota, from November 2014 to August 2020. While serving in that capacity, I worked as a police officer and K9 handler assigned to investigate tribal and federal violations concerning the illegal possession and distribution of controlled substances, as well as other offenses. I have participated in the execution of multiple tribal, state, and federal search warrants, interviews of victims and suspects, proffers, and debriefings.

2.      I affirm that I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), and authorized by law to conduct investigations and make arrests for offenses in Titles 8, 18 and 21 of the United States Code. I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) and (b).

3.      I make this affidavit in support of an application for a search warrant for the SUBJECT DEVICE listed in Attachment A, which is currently in the custody of the OSTDPS. The information to be searched on the SUBJECT DEVICE is described in the following paragraphs and in Attachment B.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training, experience and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of 21 U.S.C. §§ 846 and 841(a), Conspiracy to Distribute a Controlled Substance, and

21 U.S.C. § 844, Possession of a Controlled Substance, are present in the SUBJECT DEVICE. There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

## FACTS IN SUPPORT OF PROBABLE CAUSE

6.     On May 8, 2023, Badlands Safe Trails Task Force ("BSTTF") members conducted a controlled purchase of methamphetamine in Pine Ridge, SD from Laquetta ROUILLARD utilizing a confidential informant ("CI"). The CI was able to purchase 3.5 grams of meth from ROUILLARD. After the controlled buy, the CI debriefed and told agents ROUILLARD is selling methamphetamine in the Pine Ridge, SD, area. The CI has admitted to drug use and/or addiction. At this time and based on the investigation to date, the CI interviewed has been proven credible and reliable to Your Affiant's knowledge.

7.     Source of Information ("SOI") #1 was interviewed by law enforcement on March 16, 2023. Anja Little Hawk told SOI #1 that Laquetta ROUILLARD was coming to Pine Ridge to deliver methamphetamine. Little Hawk told SOI #1 that SOI #1 could ask ROUILLARD to deliver methamphetamine. ROUILLARD did then deliver four grams of methamphetamine to the SOI. ROUILLARD provided her phone number to SOI #1 for future drug deals. SOI #1 said he/she also communicates with ROUILLARD through Facebook Messenger. Agents have been able to corroborate some of the information SOI #1 has told them so at this time Your Affiant believes the information provided by SOI #1 regarding ROUILLARD is credible.

3

8.    On April 6, 2023, agents interviewed SOI #2. At that time, SOI #2 had been found to be in possession of 28 grams of methamphetamine and was arrested. SOI #2 had multiple individual packages of meth for sale in $20 paper bindles. SOI #2 said the meth belonged to Laquetta ROUILLARD and SOI #2 was only holding onto the methamphetamine for ROUILLARD. SOI #2 told agents ROUILLARD dropped off the methamphetamine about 30 minutes before SOI #2 was arrested. SOI #2 has held onto drugs/drug paraphernalia for ROUILLARD in the past because ROUILLARD has been robbed. ROUILLARD travels to Rapid City for her methamphetamine supply, and SOI #2 that ROUILLARD is "plugged" (source of supply) into the cartel. SOI #2 has admitted to drug activity and, at this time, and based on the investigation to date, Your Affiant believes SOI #2's information to be credible.

9.    SOI #3 was interviewed by law enforcement on May 8, 2023. SOI #3 said ROUILLARD met SOI #3 in the Pine Ridge area and sold the SOI 2.8 grams of methamphetamine for $350. Phillip Pond arrived with ROUILLARD and was present during the purchase. At this time and based on the investigation to date, SOI #3 appears to be credible and reliable to Your Affiant's knowledge.

10.    On May 21, 2023, OST DPS officers conducted an auto accident investigation in Pine Ridge, SD. Laquetta ROUILLARD was the driver of the vehicle involved in the accident. During their investigation, law enforcement located a plastic baggie containing a crystal substance, that, based on Your Affiant's training and experience, visually has the physical characteristics of methamphetamine. Officers also located $625, a black digital scale and several

4

small plastic baggies, which based on my training and experience are commonly used to package illegal narcotics for distribution. The SUBJECT DEVICE was seized from ROUILLARD during the stop.

11. Laquetta ROUILLARD was interviewed by agents on June 6, 2023. ROUILLARD admitted to traveling to Rapid City to purchase methamphetamine from a source. ROUILLARD would meet with Lisa Mills at ROUILLARD'S home in Oglala, SD. Lisa Mills, Eddie Little Spotted Horse and Avery (last name unknown) would give ROUILLARD cash. ROUILLARD would then travel to Rapid City to purchase methamphetamine. ROUILLARD would then return to Pine Ridge and deliver the methamphetamine to Lisa Mills for further distribution in the Pine Ridge area.

12. ROUILLARD states the most money she ever took to Rapid City to purchase methamphetamine was $3,000. For the $3,000, ROUILLARD purchased a big zip lock bag full of rocks of meth. ROUILLARD admitted to traveling to Rapid City to buy meth about 3 times which were transactions of $3,000, $1,500 and $600.

13. Based on my training and experience, ROUILLARD will very likely have more information on her phone (SUBJECT DEVICE) about her movements, contacts, and drug related activities. This is particularly true given that ROUILLARD'S movements to Rapid City, SD, and around the Pine Ridge Reservation, would require regular communications with her customers, sub-distributors, and likely her supplier.

5

*Modus Operandi of Drug Traffickers*

14.     During my tenure in law enforcement, I have been involved in numerous investigations of narcotic trafficking organizations involving the distribution of controlled substances and related activities. I have interviewed drug users and dealers regarding the manner in which they operate and have become familiar with their techniques. I have executed search warrants for vehicles, residence, as well as search warrants for devices, records, ledgers, social media accounts and documentation reflecting the sale of controlled substances.

15.     Based upon my training and experience, including my direct experience in this investigation, I have developed knowledge regarding practices commonly used by drug traffickers and their organizations, including:

A. Drug traffickers commonly maintain addresses or telephone numbers in books, documents and electronic devices that have memory which include computer hard drives, cellular phones, Global Positioning Systems which reflect names, addresses and telephone numbers of the associates in the trafficking organization.

B. I also know that individuals involved in the distribution of controlled substances and their associates correspond and communicate using internet, social media, email, cellular phone text messages and that their computers and/or other electronic storage media in their possession may be used to prepare, create, and maintain writings, records, and documents relating to their activities and associations, including but not limited to the trafficking of controlled substances.

C. Through my own experience and training, I am aware that it is common for narcotics traffickers to utilize cellular telephones to facilitate their drug trafficking activities. I am also aware that, in addition to using the telephones for communication purposes, said traffickers may also use the internal memory (such as "phone book" or "notes" functions) of the telephone to store names, identifying information, and contact telephone numbers of individuals involved in said drug-trafficking enterprises, and that certain models of cellular telephone also maintain limited logs of past calls made by that telephone.

6

D. I am also aware that more people, including drug traffickers, are utilizing "Smart" phones, such as Apple iPhones, and GPS units for travel directions. These GPS units can be standalone devices manufactured for that single purpose or applications used through cellular phones. Many of the "Smart" phones and GPS units are programmed with addresses from around the United States and all a user has to do is enter the address he/she wants to travel to and the "Smart" phones and GPS units will provide a travel route for the user. Besides providing a travel route for the user most of the "Smart phones" and GPS units also automatically keep track of the route the user has taken and will back track the route to the point of origin. I am aware that Facebook users' locations can be determined by data kept by Facebook, Inc.

E. Drug traffickers take or cause to be taken photographs and videos of themselves, their associates, their assets, their travels, and their product. That these traffickers usually maintain these photographs and videos in their possession, or within their residences, computers, cellular phones, vehicles, and/or other locations over which they maintain dominion and control, including on their social media accounts such as Facebook.

F. It is generally a common practice for drug traffickers to maintain records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records (drug ledgers) to show balances due for drugs sold in the past ("pay"), and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business. Such records can be maintained on paper, cellular phones, or other devices, as well as in portions of social media accounts, such as Facebook.

G. It is a generally common practice for drug traffickers to make use of wire transfers, cashier's checks, and money orders to pay for expenses associated with services to facilitate their illegal activities. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in a trafficker's residence and/or other locations over which they maintain dominion and control, including cellular phones.

7

## TECHNICAL TERMS

16.    Based on my training and experience, I use the following technical terms to convey the following meanings:

A. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

B. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

C. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

18.    *Forensic evidence.*    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each of the SUBJECT DEVICE was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

9

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine the SUBJECT DEVICE already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## REQUEST/JUSTIFICATION ORDER TO SEAL

21. I request an order sealing this case until further order of the Court, in that this search is being conducted as part of an ongoing federal criminal investigation and contains information from persons cooperating with law enforcement. Disclosure of information contained in the documents incorporated in this search and filed with the Court could seriously jeopardize this ongoing investigation.

## LIMIT ON SCOPE OF SEARCH

22.    I submit that if, during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

## CONCLUSION

23.    I submit that based on the facts set forth in this affidavit, there is probable cause to believe the SUBJECT DEVICE described in Attachment A contains evidence, fruits, and or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 844 and 846. Therefore, I request permission to search the SUBJECT DEVICE in Attachment A for the evidence, fruits, and instrumentalities identified with particularity in Attachment B.

24.    Based on the foregoing, I request that the Court issue the proposed search warrant.

Michael Carlow
FBI Task Force Officer
OST DPS Criminal Investigator


Sworn to before me and:    ☐ signed in my presence.
                           ☑ submitted, attested to, and acknowledged by reliable electronic means (video).

this 17th day of August, 2023.

Mark Moreno
United States Magistrate Judge

11